<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LOIS DOBRON, individually and on behalf of L.D., a minor, M.D., a minor, and E.D., a minor,<br><br>    Plaintiffs,<br><br>        v.<br><br>STATE OF NEW JERSEY, DIVISION OF YOUTH AND FAMILY SERVICES, KIMBERLY DINENBERG, CHRIS CHRISTIE, PAT YOUNG, BRENDA HINES, SONYA WAGNER, JOHN DORAN, MERYL NADLER, MARILYN GONZALEZ, PATRICIA WILD, MICHELE WAKEFIELD, KATHERINE BIERWAS, JOHN DOES 1-10, and ABC CORPS. 1-5,<br><br>    Defendant. | Civil Action No. 13-CV-02353<br><br>(RMB)<br><br>MEMORANDUM OPINION |

BUMB, United States District Judge:

This matter is before the Court upon its own motion. On April 12, 2013, Plaintiff filed a complaint (the "Complaint") against the Division of Youth and Family Services ("DYFS"), Kimberly Dinenberg ("Dinenberg"), Marilyn Gonzalez ("Gonzalez"), and several fictitious parties, seeking to recover for conduct arising out of an action brought against Plaintiff Lois Dobron (the "Plaintiff") for educational neglect. (Dkt. Ent. 1.) The named defendants moved to dismiss the Complaint pursuant to

1

Federal Rules of Civil Procedure 12(b)(1) and (6) on grounds that Plaintiff's claims-to the extent they could be ascertained— are barred by several doctrines of immunity, as well as the Rooker-Feldman doctrine.[1]

On January 8, 2014, in an effort to give Plaintiff an opportunity to explain her pleading in light of her pro se status, this Court held oral argument on the defendants' motion. During that hearing, it became apparent that Plaintiff's claim centered on allegations not clearly set forth in the Complaint. Specifically, Plaintiff asserted that Defendant Gonzalez made certain intentional misrepresentations to the judge in the underlying state family court proceeding and that Defendant Dinenberg withheld certain evidence in that proceeding. (See Dkt. Ent. 15.) Although the Court indicated its belief that those claims were still subject to dismissal for the same reasons articulated by the defendants' motion, in an abundance of caution the Court permitted Plaintiff an opportunity to amend her complaint to set forth particularized allegations specific to her claims as explained to the Court. In doing so, however, the Court noted that the amended complaint could not attempt to attack the decisions of the family court, which would raise

---

[1] These defendants also moved pursuant to Rule 12(b)(5) based on defective service but later withdrew this argument once they were properly served.

2

issues under Rooker-Feldman. The Court then dismissed the defendants' motion as moot and granted Plaintiff 30 days to file an amended complaint.[2] (Dkt. Ent. 39.)

On March 10, 2014, Plaintiff filed an amended complaint (the "Amended Complaint"), adding several new parties and asserting eight causes of action: fraud in the imposition of improper restraint, fraud in acquiring improper restraint affecting minor plaintiffs, abuse of process in denying Plaintiff the right to advocate for her disabled son's education, negligence, intentional infliction of emotional distress, malicious prosecution, and intentional administrative indifference. (Dkt. Ent. 56.) The gestalt of the Amended Complaint is that Plaintiff challenges the state family court's determination that Plaintiff educationally abused and neglected her son, and its issuance of a restraining order pending Plaintiff's compliance with a court-ordered psychiatric evaluation.[3] Based upon Plaintiff's own submissions, she appears

---

[2] Upon Plaintiff's request, the Court subsequently granted Plaintiff an additional 30 days to amend. (Dkt. Ent. 43.)

[3] Plaintiff principally takes issue with the failure of numerous individuals (e.g., the case worker, the attorney representing DYFS) to provide the family court with medical records for L.D., which Plaintiff contends demonstrate that L.D. suffers from a severe medical condition. Plaintiff further contends that the failure to provide these medical records caused the family court to determine that Plaintiff's view of her son's condition is merely "fantasy". (See Tr. 17:21-18:6.) However, she now alleges that she herself provided Judge Wild

to have appealed the family court decision, which was affirmed by the Superior Court of New Jersey, Appellate Division. (See Dkt. Ent. 12.)

The Amended Complaint asserts that this Court has federal question subject matter jurisdiction over Plaintiff's claims as they concern Plaintiff's Fourteenth Amendment right to homeschool or otherwise raise her children as she sees fit. (Am. Compl. at 1 ¶ 1.) Plaintiff also makes the following allegations, inter alia:

- Defendants Dinenberg and Gonzalez "made up facts in an effort to portray Plaintiff as an imminent risk to her children," including purported abuse such as "being loud, vacuuming while [the children] were trying to sleep, and ostensibly throwing shoes up at them" (Am. Compl. at p. 3 ¶ 2, p. 4 ¶ 8);
- Defendants Hinds, Young, Wakefield, Wagner, and Dinenberg were given medical records documenting L.D.'s severe asthma but Defendant Wagner represented to the family court that L.D. did not have a medical condition that prevented him from attending school (id. at p. 5 ¶¶ 13-15);
- "Defendants negligently investigated, and ignored the medical reports pertaining to plaintiff [L.D.], presented and or available to them, in reckless disregard of the plaintiff's rights" (id. at p. 10 ¶ 2);
- "Defendant's prosecution of plaintiff was without probable cause, and not well founded in law or fact" (id. at p. 11 ¶ 2);
- Plaintiff informed Defendant, Governor Chris Christie, of the state workers' alleged misconduct and "he promised to 'fix' the effects" of the misconduct and

---

with those medical records prior to the family court decision. (Am. Compl. at p. 14 ¶ 8, p. 15 ¶ 17.)

4

- "advised he gave a 'package' to Glenn Grant's office from which Mr. Grant would take action" but Defendant Meryl Nadler, counsel to Mr. Grant, denies any such package was received (id. at p. 12 ¶¶ 5-6);

- Defendant John Doran, who is Defendant Wagner's supervisor, "refused to do any investigation" into his employee's alleged misconduct (id. at p. 13 ¶ 7);

- Defendant, the Honorable Patricia Wild, refused to recuse herself although she represented a defendant in an action in which Plaintiff had sued (id. at p. 13 ¶¶ 3-4); and

- Plaintiff provided Judge Wild with medical records demonstrating L.D. had a medical condition but Judge Wild ignored those records and entered several orders with which Plaintiff disagrees and contends constitute a misuse of Judge Wild's authority (id. at pp. 13-16).

Plaintiff seeks compensatory damages and attorneys' fees and costs.[4] The Court has gone out of its way to provide Plaintiff with an opportunity to cogently set forth a viable claim, but it is now clear that she cannot. Accordingly, the Court sua sponte dismisses Plaintiff's Amended Complaint. See Huafeng Xu v. Arpert, 2014 WL 200262, at *2 (D.N.J. Jan. 15, 2014) ("The Court has the power to dismiss claims sua sponte under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." (citing Bintliff-Ritchie v. Am. Reins. Co., 285 F. App'x 940, 930 (3d Cir. 2008); Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980))).

---

[4] It is unclear on what basis Plaintiff seeks attorneys' fees as she is proceeding in this action pro se.

5

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "[A]n unadorned, the-defendant-unlawfully harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Additionally, Federal Rule of Civil Procedure 8(a) requires that a complaint contain:

> (1) [A] short and plain statement of the grounds for the court's jurisdiction, unless the court already has

jurisdiction and the claim needs no new jurisdictional support;

(2) [A] short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) [A] demand for the relief sought, which may include relief in the alternative or different types of relief.

The Amended Complaint is dismissed for the following reasons.[5]

### A. Defendants are Not "Persons" Under § 1983

As to Plaintiff's claims against DYFS, and any Defendant sued in his/her official capacity, these individuals are not "persons" amenable to suit under 42 U.S.C. § 1983. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Delbridge v. Schaeffer, 569 A.2d 872, 889 (1989) ("[N]either a state nor its alter ego is a person for purposes of § 1983 regardless of whether the action is brought in state or federal court.").[6] Accordingly, these claims must be dismissed.

---

[5] The Court also notes that certain immunity principles, such as litigation or prosecutorial immunity, may also apply to bar Plaintiff's claims but the Court need not address these principles in light of the numerous other reasons dictating dismissal.

[6] It is unclear from Plaintiff's complaint whether she is suing the individual defendants in their official or individual capacities. The Amended Complaint only specifically addresses the nature of the claims against Defendant Dinenberg, who is

**B. Eleventh Amendment Immunity**

In addition, the claims for money damages against DYFS, and any Defendant sued in his/her official capacity are barred by the doctrine of sovereign immunity. See Will, 491 U.S. at 66 (noting that § 1983 "provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity"); Quern v. Jordan, 440 U.S. 332, 342 (1979) (reaffirming "that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"). The Eleventh Amendment immunizes state agencies from suit in federal court when the state is the real party in interest. See, e.g., Pena v. Div. of Child & Fam. Servs., No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010). Here, because the state is the real party in interest, sovereign immunity protects DYFS, a state agency. Id. Moreover, "[s]overeign immunity extends to cover individual officials sued in their official capacities because 'a judgment against a public servant 'in his official capacity' imposes liability' on

---

explicitly sued "personally and in her official capacity." (Am. Compl. at p. 3, ¶ 1.)

the state, which sovereign immunity was meant to prevent in the first place." Id.; Kentucky v. Graham, 473 U.S. 159, 165 (1985); Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990); see also Hussein v. New Jersey, No. 09-1291, 2010 WL 376609, at *4 (D.N.J. Jan. 26, 2010) ("Immunity also extends to state agents, like Governor Corzine, when the 'action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to sovereign immunity from suit even though individual officials are nominal defendants.'").

### C. Rooker-Feldman

Plaintiff's claims against the parties are also precluded by the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine deprives a federal district court of jurisdiction to review, directly or indirectly, a state court adjudication." Judge v. Canada, 208 F. App'x 106, 107 (3d Cir. 2006) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). This doctrine precludes courts from evaluating "constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding." FOCUS v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotations omitted). "State and federal claims are inextricably intertwined (1) when in order to grant the federal plaintiff the relief

9

sought, the federal court must determine that the state court judgment was erroneously entered [or] (2) when the federal court must . . . take action that would render [the state court's] judgment ineffectual." ITT Corp. v. Intelnet Int'l, 366 F.3d 205, 211 (3d Cir. 2004) (internal quotation marks and citations omitted). "In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling." FOCUS, 75 F.3d at 840 (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).

The Third Circuit has consistently affirmed district court determinations that the Rooker-Feldman doctrine prohibits suits brought in federal court pursuant to Section 1983 where, as here, plaintiffs challenge the judgments of state family courts. See, e.g., Gass v. DYFS Workers, 371 F. App'x 315, 315–16 (3d Cir. 2010) (affirming district court dismissal under Rooker-Feldman of claims asserted against state court judge, DYFS, DYFS officials, deputy attorneys general, and public defender attorney in underlying termination of parental rights action to the extent plaintiff challenged family court orders regarding custody of two minors); Johnson v. City of New York, 347 F. App'x 850, 851–52 (3d Cir. 2009) (affirming district court determination that claims were prohibited by Rooker-Feldman to the extent plaintiff sought review of family court decisions

10

regarding emergency removal of children from his home); McKnight v. Baker, 244 F. App'x 442, 444–45 (3d Cir. 2007) (affirming district court finding that the court lacked jurisdiction under Rooker-Feldman to review Section 1983 claims where crux of plaintiff's complaint was that defendants conspired to have the family court suspend his visitation rights with his daughter); McAllister v. Allegheny Cnty. Family Div., 128 F. App'x 901, 902 (3d Cir. 2005) (affirming district court dismissal of federal constitutional claims where plaintiff "plainly [sought] to void or overturn adverse rulings entered in the child-custody litigation" by state family court because such relief required "a finding that the state court ... made incorrect factual or legal determinations").

    Similarly, courts within this District have repeatedly recognized that they lack subject matter jurisdiction to entertain claims which challenge adjudications made by state family courts. See, e.g., Reed v. N.J. Div. of Youth & Family Servs., Civ. No. 09-3765, 2012 WL 1224418, *3 (D.N.J. Apr. 10, 2012) (collecting cases); Severino v. Div. of Youth & Family Servs., Civ. No. 11-3767, 2011 WL 5526116, *1 (D.N.J. Nov. 14, 2011) (dismissing sua sponte pro se plaintiff's Section 1983 claims against defendants, including DYFS, DYFS caseworker, New Jersey State Court Judges, and a deputy attorney general, under Rooker-Feldman which challenged state court proceeding

11

terminating plaintiff's parental rights); <u>Wilson v. Atl. Cnty. DYFS</u>, Civ. No. 10-202, 2010 WL 2178926, at *5-6 (D.N.J. May 25, 2010) (dismissing plaintiff's complaint against local DYFS agency and state court judge and finding that <u>Rooker-Feldman</u> claims relating to the family court's issuance of a restraining order which effectively barred plaintiff from seeing his son because the claims were "inextricably intertwined" with the restraining order and amounted to a "prohibited appeal" from the family court adjudication); <u>Kwiatkowski v. De Francesco</u>, Civ. No. 01-6145, 2006 WL 2347831, *4-5 (D.N.J. Aug.11, 2006) (concluding that <u>Rooker-Feldman</u> barred constitutional claims because they were "a direct result of the actions taken by DYFS and the state courts" and were "so inextricably intertwined with the state court proceedings that federal review [was] precluded as it would be tantamount to appellate review of state court determinations.").

　　All of Plaintiff's claims directly or indirectly challenge the validity of the family court's determination that Plaintiff educationally abused and neglected her children and thus are barred by <u>Rooker-Feldman</u>. <u>See, e.g.</u>, <u>McKnight</u>, 244 F. App'x at 444-45 ("Despite McKnight's argument to the contrary, it is abundantly clear that the crux of his complaint is that Middleton and others conspired to have the Family Court suspend his visitation rights and have subsequently acted in accordance

12

with that Family Court order. <u>It is hard to imagine a case which more directly asks a district court to review the actions of a state court.</u> In order for McKnight to prevail, the District Court would need to conclude that the Family Court erred in its suspension of McKnight's visitation rights, or that the various defendants have violated his constitutional rights in adhering to the dictates of that order. The District Court does not have jurisdiction to so conclude.") (emphasis added).

### D. Judicial Immunity

In Count VIII, Plaintiff seeks money damages from Judge Wild for various alleged acts of misconduct, including her refusal to consider the medical records, her order instructing Plaintiff to produce a psychiatric report, her entry of a restraining order against Plaintiff, and her refusal to "put" the restraining order in the "system." (Am Compl. at pp. 13-16.) This claim is barred by the doctrine of judicial immunity, which which protects a judge performing her judicial functions from suit for money damages, <u>Mireles v. Waco</u>, 502 U.S. 9, 9-10 (1991), or for injunctive relief except in limited circumstances not satisfied here, <u>Azubuko v. Royal</u>, 443 F.3d 302, 303-04 (3d Cir. 2006). Immunity is available even if a judge acts erroneously, corruptly, or in excess of her jurisdiction. <u>Mireles</u>, 502 U.S. at 11-12; <u>Bradley v. Fisher</u>, 80 U.S. 335, 351-54 (1871) (noting judges are not liable for judicial acts done

maliciously or corruptly); Stump v. Sparkman, 435 U.S. 349, 355-57 (1978) (same). Moreover, "judicial immunity is not overcome by allegations of bad faith or malice." Mireles, 502 U.S. at 11. Plaintiff's complaints against Judge Wild amounts to a disagreement with the orders and decisions rendered by her in the state court action. The appropriate method for addressing such a disagreement is to appeal the relevant decisions. Pierson v. Ray, 386 U.S. 547, 554 (1967) ("Any errors made by a judge may be corrected on appeal."). Indeed, it appears from other documentation submitted by Plaintiff that at least some of these orders were appealed to the Appellate Division and the Supreme Court of New Jersey. (See Dkt. Ents. 12, 53 (indicating intention to appeal to United States Supreme Court).) Thus, this claim must be dismissed.

### E. Failure to State a Claim

In addition to the reasons set forth above, Plaintiff's malicious prosecution and intentional administrative indifference claims must be dismissed for failure to state a claim. To establish a claim for malicious prosecution pursuant to the Fourth Amendment and § 1983, the complaint must allege that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing

14

the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 362-63 (3d Cir. 2003) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).[7] Here, Plaintiff conclusorily alleges that "Defendant's prosecution of plaintiff was without cause," but she has failed to identify a criminal proceeding as required. Rather, the "prosecution" to which she refers seems to be the DYFS "prosecution" of the educational neglect complaint against Plaintiff. (See, e.g., Am Compl. p. 9 ¶ 13 ("Defendants wrongfully prosecuted Plaintiff Lois Dobron for 'educational neglect' of [L.D.] . . . .").) Even assuming she had satisfied the first element, she cannot establish that any such proceedings terminated in her favor in light of the decisions of both the family court and Appellate Division. Therefore, this claim must be dismissed.

Plaintiff also asserts a claim for "intentional administrative indifference" against all Defendants except Judge Wild and Defendant Bierwas for their refusal to supervise their employees or prevent their wrongful misconduct. No such cause of action exists and, therefore, this count must be dismissed.

---

[7] Under New Jersey law, the tort of malicious prosecution requires only the first four elements. See Lind v. Schmid, 337 A.2d 365, 368 (N.J. 1975).

15

Moreover, the Court finds that, as it has already provided Plaintiff an opportunity to amend her complaint in an effort to set forth a viable claim, and in light of the reasons set forth above, the Amended Complaint is dismissed with prejudice. See, e.g., DelRio-Mocci v. Connolly Props., Inc., No. 08-2753, 2009 WL 2989537, at *2 (D.N.J. Sept. 16, 2009) ("A third opportunity to amend, allowing Plaintiff a fourth opportunity to file a complaint in this action, is unlikely to remedy this. Plaintiff's three bites at the apple are sufficient."); see also Wright & Miller, Federal Practice & Procedure § 1487 (2013) ("In a similar vein, if the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied."); Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 245-46 (3d Cir. 2008).

ACCORDINGLY, IT IS HEREBY on this **18th** day of **March 2014**,

**ORDERED** that Plaintiff's claims are DISMISSED with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall close this matter.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE